UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GULFPOINT CONSTRUCTION
COMPANY, INC.,

    Plaintiff,

v.                                                  Case No.:  2:22-cv-86-SPC-NPM

WESTFIELD INSURANCE
COMPANY,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Westfield Insurance Company's ("Westfield") Motion to Strike Plaintiff Gulfpoint Construction Company, Inc.'s ("Gulfpoint") Expert Witnesses (Doc. 49). Gulfpoint has responded (Doc. 52), and Westfield has replied (Doc. 56). For the following reasons, the Court denies the motion.

## **BACKGROUND**[2]

Gulfpoint alleges it sustained substantial property damage when Hurricane Irma made landfall on Florida's west coast. Westfield was

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.
[2] This brief factual background includes only information relevant to Westfield's motion to strike.

Gulfpoint's property insurer. Gulfpoint filed a one-count complaint for breach of contract against Westfield in Florida's Twentieth Judicial Circuit (Doc. 22), which Westfield removed to this Court (Doc. 1).

During discovery, Gulfpoint served its Disclosure of Expert Reports: Byron Anderson, who opines on causation; and Dennis James, who opines on damages. (Doc. 49-1; Doc. 49-2; Doc. 49-3). Westfield deposed James, but Westfield failed to depose Anderson within the discovery deadline, because it cancelled two scheduled depositions. The parties moved for an extension of the discovery deadline,[3] which the Court denied (Doc. 47). This motion to strike Gulfpoint's expert witnesses followed.

## LEGAL STANDARD

If an expert witness is retained or specially employed to provide expert testimony in a case, Federal Rule of Civil Procedure 26(a)(2)(B) requires the expert disclosure to come with a written report—prepared and signed by the witness—that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;

---

[3] This was the parties' second motion to extend discovery deadlines. (Doc. 33; Doc. 46). The Court granted the first motion by endorsed order (Doc. 36). But the Court denied the second motion for failure to show good cause, as required by Federal Rule of Civil Procedure 16. The Court stated, "the motion makes no attempt to satisfy Rule 16's ["good cause"] standard. It doesn't even cite it. And there is simply no showing that despite all due diligence the two unidentified witnesses could not be deposed before either the original or the extended discovery cutoff." (Doc. 47 at 2).

> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). And under Federal Rule of Civil Procedure 37(c)(1), a party that violates Rule 26(a)'s disclosure requirements could be prohibited from using the challenged information or witness, unless the non-disclosure was substantially justified or is harmless.

"Excluding expert testimony is a 'drastic' sanction requiring careful consideration." *United States v. McCarthy Improvement Co.*, No. 3:14-CV-919-J-PDB, 2017 WL 443486, at *6 (M.D. Fla. Feb. 1, 2017) (citing *Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988)). And to determine whether a failure to disclose was substantially justified or harmless, courts consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Bendik v. USAA Cas. Ins. Co.*, No. 6:19-CV-118-ORL-41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019) (collecting cases).

## DISCUSSION

Westfield describes both of Gulfpoint's expert disclosures as "woefully inadequate," and it argues they should be stricken for failure to comply with Rule 26(a)(2)(B). (Doc. 49 at 2). Westfield contends Gulfpoint has offered no justification for not complying with Rule 26's disclosure requirements, much less the substantial justification prescribed by Rule 37(c)(1).

First, Westfield attacks Gulfpoint's expert disclosure for Anderson as omitting: (1) a complete statement of his opinions and the basis and reasons for them; (2) exhibits that summarize or support his opinions; (3) a list of other cases for which Anderson testified as an expert; and (4) a statement of his compensation. Westfield argues Anderson's opinion on causation "amount[s] to speculation rather than an opinion with a supporting basis and reasons tending to show a causal relationship." (Doc. 49 at 5).

Next, Westfield attacks the expert disclosure for James on similar grounds, stating it omits: (1) a complete statement of his opinions and the basis and reasons for them; (2) the facts and data considered in forming his opinion; (3) exhibits that summarize or support his opinions; (4) James' qualifications; (5) a list of other cases for which James testified as an expert; and (6) a statement of his compensation. Westfield also pointedly argues James' testimony cannot be considered an expert opinion because it is based on a report prepared by someone else.

Gulfpoint acknowledges it does not have substantial justification for its failure to comply with Rule 26, but it contends other factors support admission of its experts' testimony. Gulfpoint argues there is no surprise here because Westfield received the expert materials around nine months before the trial term; Westfield had every opportunity to cure any potential prejudice but did not do so; there is no risk of trial disruption; and testimony from Anderson and James is critical to its case.

The Court finds Gulfpoint's arguments persuasive. Rule 26's expert disclosure rule provides opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for testimony from other expert witnesses. *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1361–62 (11th Cir. 2008) (citation and quotation marks omitted). Gulfpoint served its expert disclosure on August 1, 2022 (Doc. 49 at 1–2), and the Court amended its case management and scheduling order to extend the parties' discovery deadline from October 28, 2022, until December 2, 2022 (Doc. 26; Doc. 38). This gave Westfield ample time to depose Gulfpoint's experts and to arrange for expert witnesses of its own to offer competing opinion testimony about causation and damages.

Westfield deposed James, but it did not depose Anderson. In fact, it cancelled Anderson's deposition twice. The Court declines to impose the "drastic" sanction of excluding Anderson's testimony, especially given

5

Westfield's inaction. See *Ellison v. Windt*, No. 6:99-CV-1268-ORL-KRS, 2001 WL 118617, at \*3 (Jan. 24, 2001) ("When, as here, a party fails to promptly seek enforcement of his rights, any prejudice suffered arises largely from the party's own inaction.").

Nor is the Court inclined to exclude James' testimony for failure to satisfy Rule 26's disclosure requirements. Though it failed to meet the letter of Rule 26's disclosure requirements, Gulfpoint did timely provide all necessary information to Westfield, which then had a reasonable opportunity to prepare for effective cross-examination and to arrange for its own expert witnesses. The Court concludes that under these circumstances, Gulfpoint's Rule 26 omissions were harmless. See *OFS Fitel*, 549 F.3d at 1363–65.

Secondarily, Westfield argues Gulfpoint's experts' opinions fail under a *Daubert*[4] analysis and should be stricken as unreliable.[5] Gulfpoint disagrees and contends *Daubert* is satisfied regarding both its experts, who should both be permitted to testify before the jury.

Trial courts must ensure that scientific and technical testimony "is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

---

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).
[5] The Court notes that Westfield largely abandons its Rule 26 argument in its reply, in favor of this argument, which it raises almost as an afterthought in its motion. (Doc. 56; Doc. 49).

6

And the importance of that gatekeeping requirement "cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The foundation of admissibility for expert testimony is Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Courts apply a "rigorous" three-part inquiry to determine whether expert testimony is admissible under Rule 702. *Frazier*, 387 F.3d at 1260. "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004), *abrogation on other grounds recognized by Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1258 n.7 (11th Cir. 2010).

Westfield argues Anderson's opinion on causation is speculative and fails to consider all the facts, specifically roof repairs Gulfpoint undertook

before Hurricane Irma. And Westfield argues that Florida appellate courts and the Eleventh Circuit exclude wind causation experts as being unreliable when they overlook alternative causes of roof damage. But the cases Westfield cites are factually distinguishable[6] and do not mandate Anderson's exclusion here.

And Westfield contends James' testimony on damages cannot be considered an opinion because it relies on a repair estimate prepared by someone else. But Gulfpoint has retained James to determine only the market costs of the repairs to Gulfpoint's roof system, a task James has performed "over a thousand times" and for which he "has testified as an expert witness

---

[6] In *Dias v. GeoVera Specialty Insurance Co.*, the would-be causation expert did not review other records, based critical determinations on conjecture, offered no methodology to support his opinion about the timing and type of roof damage, and based his opinion of the date of loss on third-hand knowledge from an unavailable primary source. 543 F. Supp. 3d 1282, 1288 (M.D. Fla. 2021). In *Coconut Key Homeowners Association, Inc. v. Lexington Insurance Co.*, the court concluded the would-be causation expert "lack[ed] both the expertise and reliable underlying data needed to provide expert testimony about either wind speeds at Coconut Key during Hurricane Wilma or the cause of the damages he has observed there," based on his admissions that he had no background in engineering and that he would defer to an engineer's opinion about the causes of damage, had no scientific background in pressure damage, did not know the wind speed during the hurricane, made no scientific determinations about cyclic loading or wind pressure during the hurricane, admitted other causes were possible, and did not undertake any scientific tests to eliminate alternative causes. 649 F. Supp. 2d 1363, 1371 (S.D. Fla. 2009). And in *Greater Hall Temple Church of God v. Southern Mutual Church Insurance Co.*, the Eleventh Circuit affirmed the trial court's exclusion of two would-be experts on reliability grounds. 820 F. App'x 915, 918–19 (11th Cir. 2020). The first admitted he had little experience with the type of roofing at issue, and admitted there was no scientific or objective basis behind his opinion. 820 F. App'x at 918. The second "offered no principles—much less scientific ones—to support his opinion," and he admitted that he was not an expert in wind or wind velocity, and that his opinion was not based on "science or measurements," but merely on "common sense." 820 F. App'x at 919.

on more than seven hundred occasions."[7] (Doc. 52 at 10 (citing Doc. 49-4 at 7:18–25, 12:7–13)). And though Westfield argues James' opinion is unreliable because he did not personally draft the Xactimate estimate or inspect the property, the inspection, measurements, photographs, and field notes were all made by one of James' employees—a field estimator who routinely prepares field inspection notes for just this purpose.

The Court is not persuaded by Westfield's arguments and does not find either expert's methodology unreliable for purposes of *Daubert*. Indeed, Westfield does not seem ultimately to argue about the reliability of the methodologies Anderson and James used, only their specific application to this case. But this criticism challenges the weight and credibility of the expert opinions, not their admissibility. And Westfield may cross-examine both Anderson and James on whatever flaws or imperfect data it believes exist in their analyses, but this is not grounds for excluding their testimony altogether. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345–46 (11th Cir. 2003); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-

---

[7] Even Westfield's counsel seemed taken aback by James' depth of experience:
    Q. Mr. James, have you been deposed before?
    A. Yes.
    Q. Yeah? How many times?
    A. Over 700.
    Q. 700? That's got to be one of the highest, I've—I've come across. . . . How many of those depositions have involved you as a—as an expert witness in—
    A. All.
(Doc. 49-4 at 7:15–25).

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.").

## CONCLUSION

Although Gulfpoint's expert disclosures were incomplete, the omitted information was provided to Westfield before the experts' scheduled depositions. Under the circumstances presented here, their omission was harmless. And because the Court finds neither expert's opinion to be unreliable, it rejects Westfield's *Daubert* arguments.

Accordingly, it is now

**ORDERED:**

Defendant Westfield Insurance Co.'s Motion to Strike Plaintiff Gulfpoint Construction Company, Inc.'s Expert Witnesses (Doc. 49) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 7, 2023.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record