UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GULFPOINT CONSTRUCTION
COMPANY, INC.,

    Plaintiff,

v.                                                   Case No.: 2:22-cv-86-SPC-NPM

WESTFIELD INSURANCE
COMPANY,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Westfield Insurance Company's ("Westfield") Motion for Summary Judgment (Doc. 48), Plaintiff Gulfpoint Construction Company, Inc.'s ("Gulfpoint") response (Doc. 51), and Westfield's reply (Doc. 54). For the following reasons, the Court grants the motion.

## BACKGROUND

Gulfpoint is a construction company. Westfield insured Gulfpoint's contractors' office. The Parties' insurance policy ("Policy") included the following notice provision:

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

> E. Loss Conditions
> . . .
> 3. Duties In The Event Of Loss Or Damage
>     a. You must see that the following are done in the event of loss or damage to Covered Property:
>         . . .
>         (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(Doc. 22-1 at 71–72). And it included these provisions regarding coverage:

> G. Optional Coverages
>    If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item
>    . . .
>    3. Replacement Cost
>        a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition, of this Coverage Form.
>        . . .
>        d. We will not pay on a replacement cost basis for any loss or damage:
>            (1) Until the lost or damaged property is actually repaired or replaced; and
>            (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(Doc. 22-1 at 76).

Hurricane Irma made landfall on September 10, 2017. Four days later—on September 14, 2017—Gulfpoint had Crowther Roofing and Construction

2

Services, LLC ("Crowther") inspect damage and perform "emergency repair work . . . due to Hurricane Irma." (Doc. 48-3 at 77–78). Crowther found water that came in through the vents, an open membrane around the vent flashings, damage to the lead flashing, loose tiles, and cracked tiles. (Doc. 48-3 at 78). What Crowther "could visually see," it fixed, to the tune of $1,263.00. (Doc. 48-3 at 78). Gulfpoint did not notify Westfield of the damage or repair work at that time.

Fast forward two years to September 6, 2019, when Gulfpoint first notified Westfield that Hurricane Irma had damaged its roof. Westfield first hired an adjuster, Gil Baran, who inspected the building alongside Gulfpoint's adjuster, Blake Day. Westfield then retained an engineer with Haag Engineering, Blake Shatto, to inspect Gulfpoint's building, evaluate any roof or water damage, and determine causation. Two Westfield adjusters reviewed the engineer's report and determined the investigation did not reveal covered wind damage to the roof or an opening in the roof and walls that allowed water to enter.

Westfield denied coverage for Gulfpoint's claim by letter dated November 14, 2019. The letter's second paragraph stated, "The claim was reported to us on 9/6/2019, with a reported date of loss presented as 9/10/2017. As noted, the claim was presented to Westfield Insurance Company 2 years after the claimed date of loss." (Doc. 51-8 at 1). Westfield explained the damages Baran "viewed

did not appear to have been caused by a wind event," and it cited Shatto's findings, specifically: (1) no roof tiles had been displaced or broken in a manner consistent with wind effects; (2) no portions of the modified bitumen roof had damage consistent with wind effects; (3) there were observable fractures and cracks unrelated to wind but attributable to shrinkage/weathering, foot traffic, age, or installation/maintenance activities; (4) some field tiles were unsecured and had slipped because of gravity; and (5) some interior ceiling tiles were stained from moisture sources within the building or, sometimes, from wind-driven rain through the gooseneck vents above. (Doc. 51-8 at 1–2).

Concluding that its investigation revealed no roof damage caused by a wind event or any other covered loss, Westfield denied Gulfpoint's claim. Westfield's letter concluded with the following reservation of rights:

> Please be aware that neither this letter nor any actions taken by Westfield Insurance Company or any of its representatives are intended to waive any of the terms or conditions of our policy of insurance with you and should not be construed as a waiver of any rights or defenses under said policy. Also, please be advised that this letter is not intended to set forth all issues of coverage which may arise from this loss under your policy of insurance with Westfield Insurance Company.

(Doc. 51-8 at 3). Westfield reiterated its denial of Gulfpoint's claim by a second letter dated January 6, 2020. Like its predecessor, the second letter reserved Westfield's rights under the Policy: "Westfield Insurance Company does not

4

waive, and expressly reserves, all of its rights and defenses under the policy of insurance or otherwise." (Doc. 51-10).

Gulfpoint filed a one-count complaint for breach of the Policy against Westfield in Florida's Twentieth Judicial Circuit (Doc. 22), which Westfield removed to this Court (Doc. 1). Now Westfield seeks summary judgment on two of its affirmative defenses: (1) the failure to give prompt notice, and (2) the inability to recover benefits under the Policy's Replacement Cost ("RCV") coverage because Gulfpoint has not yet replaced its roof.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of*

5

*Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013) (citation omitted). But for issues the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (citation omitted). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida,* 285 F.3d 1339, 1341–42 (11th Cir. 2002). It may not undertake credibility determinations or weigh the evidence when reviewing the record. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

Neither of Westfield's arguments for summary judgment are fact intensive. Essentially, the Court must determine whether, under a handful of salient facts, Westfield is entitled to judgment as a matter of law. The Court

6

will first address "prompt notice," and then discuss whether Gulfpoint's failure to repair its roof bars its ability to recover RCV damages. Because the Policy was negotiated in Florida, Florida law governs this diversity action. *See State Farm Mut. Auto. Ins. Co. v. Duckworth,* 648 F.3d 1216, 1218 (11th Cir. 2011).

1. **Gulfpoint Did Not Promptly Notify Westfield of Its Loss, and Westfield Was Prejudiced by Gulfpoint's Delay.**

"The purpose of a provision for notice and proofs of loss is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *State Farm Mut. Auto. Ins. Co. v. Ranson,* 121 So. 2d 175, 180 (Fla. 2d Dist. Ct. App. 1960), *overruled in part on other grounds*, *Am. Fire & Cas. Co. v. Collura,* 163 So. 2d 784, 793–94 (Fla. 2d Dist. Ct. App. 1964). And so, under Florida law, an insured's failure to give timely notice is a "legal basis for the denial of recovery under the policy." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.,* 599 F. App'x 875, 879 (11th Cir. 2015) (citations omitted).

To determine whether it is appropriate for the insurer to deny the insured recovery, courts undertake a two-step analysis. *Id.* (citations omitted). The Court must initially determine whether the insured provided timely notice; if notice was untimely, the Court then presumes the insurer was prejudiced, and it is up to the insured to rebut that presumption. *Id.* (citations omitted).

7

"[T]here is no 'bright-line' rule under Florida law setting forth a particular period of time beyond which notice cannot be considered 'prompt.'" *Id.* (citation omitted). "Rather, under Florida law, 'prompt,' 'as soon as practicable,' 'immediate,' or comparable phrases have been interpreted to mean that notice should be given 'with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case.'" *Id.* (citation omitted). "Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Id.* (citation and quotation marks omitted). "[T]he question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts, yet when facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court." *Id.* (citation and quotation marks omitted).

Westfield argues Gulfpoint "is a sophisticated insured with knowledge of construction and of its own building," it knew its building sustained some damage during Hurricane Irma, it had that damage repaired within days of the storm, and yet it delayed two years in reporting the damage to Westfield. (Doc. 48 at 7, 9). And Westfield cites cases from both Florida and federal courts that have determined a two-year delay constitutes untimely notice. (Doc. 48 at 8).

8

Gulfpoint makes several responsive arguments: (1) the Policy does not define "prompt notice"; (2) the only clear notice requirement was created by statute and provided Gulfpoint three years from Hurricane Irma to notify Westfield of its claim;[2] (3) determination of whether an insured has provided prompt notice of a claim depends on the circumstances and is ordinarily a question of fact for the jury; and (4) an event must be of sufficient consequence to trigger an insured's duty to provide notice, and "[Westfield] is attempting to make the creative argument that a minor immediate and necessary emergency temporary repair of a mere $1,263.00, to prevent further water intrusion inside [Gulfpoint's] Building was a sufficient consequence to trigger [Gulfpoint's] obligation to provide notice to [Westfield]." (Doc. 51 at 8–9).

The Court is not persuaded by Gulfpoint's arguments. First, although Florida Statutes § 627.70132 establishes a statutory time limit after which an insurance claim based on hurricane damage is barred, it does not alter the Policy, which required Gulfpoint to give Westfield "prompt notice" of its loss or damage. (Doc. 1-1 at 80). Second, Hurricane Irma was undeniably an event of

---

[2] "A claim . . . under an insurance policy that provides property insurance, as defined in s. 624.604, for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim . . . was given to the insurer in accordance with the terms of the policy within 3 years after the hurricane first made landfall or the windstorm caused the covered damage." Fla. Stat. § 627.70132 (Effective: June 1, 2011 to June 30, 2021). Although section 627.70132 has been amended, the version in effect when the Policy was executed applies here. *See Shelton v. Liberty Mut. Fire Ins. Co.*, 578 F. App'x 841, 845 (11th Cir. 2014) (collecting cases).

9

sufficient consequence to trigger Gulfpoint's duty to provide notice; the Court rejects Gulfpoint's creative argument[3] that its minor repair bill was the triggering event here.

Gulfpoint is correct that whether notice was "prompt" depends on the circumstances and is often a question of fact for the jury. But if the record does not support an argument that an insured's delayed notice to an insurer was reasonable, Florida courts permit a ruling for the insurer on summary judgment. *See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 848 (11th Cir. 2014) (collecting cases).

Gulfpoint's business is construction, so Gulfpoint is not an ordinary insured. In the days just after Hurricane Irma, it realized its building required "emergency repair work . . . due to Hurricane Irma." (Doc. 48-3 at 78). It retained a roofing company to make those emergency repairs. And then it did nothing. Finally, two years later, it contacted Westfield to let it know there might be a problem. Given these facts and circumstances, the only inference to be drawn is that Gulfpoint's delay was unreasonable.

Having determined that Gulfpoint's notice to Westfield of its Hurricane Irma claim was untimely, the Court presumes Westfield was prejudiced by the

---

[3] The Court suspects that even Gulfpoint recognizes this argument is a lark, as its language ("a minor immediate and necessary emergency temporary repair of a mere $1,263.00") conjures images of throwing spaghetti at a wall to see what sticks.

delay—a presumption that Gulfpoint must now endeavor to rebut.[4] *See Yacht Club*, 559 F. App'x at 879 (citations omitted).

Gulfpoint must now "show lack of prejudice where [Westfield] has been deprived of the opportunity to investigate the facts." *See Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1218 (Fla. 1985). "The purpose of a provision for notice and proof of loss goes beyond mere causation and is 'to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it.'" *See Yacht Club,* 599 F. App'x at 881 (quoting *Laster v. U.S. Fid. & Guar. Co.,* 293 So.2d 83, 86 (Fla. 3d Dist. Ct. App. 1974)). And an insurer is prejudiced by untimely notice when it frustrates that underlying purpose. *See id.* (quoting *1500 Coral Towers Condo. Assoc. Inc. v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 544 (Fla. 3d Dist. Ct. App. 2013)).

---

[4] But first, the Court will briefly address Gulfpoint's argument that Westfield should be precluded from denying coverage based on untimely notice. Gulfpoint contends Westfield "**never** asserted the issues of prompt notice and prejudice in its two (2) complete denial coverage determination letters" and so is precluded and estopped from asserting them now. (Doc. 51 at 6–7). Gulfpoint is wrong factually and legally. First, in its initial letter to Gulfpoint denying coverage, Westfield took issue early, clearly, and prominently with Gulfpoint's two-year delay in notifying the insurer about its Hurricane Irma claim. (Doc. 51-8 at 1). And in both letters denying coverage, Westfield expressly reserved all its rights and defenses under the Policy (Doc. 51-8 at 3; Doc. 51-10). Second, the cases Westfield cites in support of its argument are factually distinguishable and far less probative than Gulfpoint suggests. And in one instance, Gulfpoint relies on a district court order for the principle that an insurer may not assert a policy condition or exclusion as a defense to coverage if it did not rely on that policy language at the time of its coverage determination. But the Eleventh Circuit specifically discussed and rejected that principle before reversing the district court's order and remanding for trial. Gulfpoint's response does not mention this subsequent history.

11

Gulfpoint states it cooperated with Westfield's investigation of the claim, that Shatto testified he conducted a comprehensive investigation of the claim, and that Westfield never communicated it was prejudiced in its investigation. But that both parties can form (and present) different opinions about causation cannot rebut the presumption of prejudice. *See id.* Gulfpoint's argument that there was no prejudice here is complicated by the "emergency repair work" it undertook in the days following Hurricane Irma, because Westfield could not participate in the repairs or investigate before they were made. *See id.* (citing *PDQ Coolidge,* 566 F. App'x at 849–50).

Gulfpoint states Westfield cannot prove it was prejudiced (Doc. 51 at 9), and it faults Westfield for failing to produce "a scintilla of evidence proving it was prejudiced in any way" (Doc. 51 at 13–14). But as the Eleventh Circuit has explained, requiring Westfield to prove a lack of prejudice "would flip the burden from the insured to the insurer, which is contrary to Florida law." *See Yacht Club,* 599 F. App'x at 881. Because Westfield has offered no evidence to rebut the presumption of prejudice, it has not carried its burden, and this matter can be resolved on summary judgment. *See PDQ Coolidge,* 566 F. App'x at 849 (collecting cases). Westfield's motion for summary judgment is granted on this ground.

### 2. Without Repairing Its Roof, Gulfpoint Cannot Recover Replacement Cost Value Under the Policy.

The Court's analysis could end with its notice and prejudice determinations. But in the interest of completeness, the Court will briefly address Westfield's argument about RCV coverage.

Westfield states Gulfpoint's expert disclosure suggests Gulfpoint is seeking RCV damages. (Doc. 48 at 5 (citing Doc. 48-7 at 2)). But it argues that Gulfpoint cannot recover RCV damages because it has completed none of the repairs or replacements it claims it needs. Gulfpoint responds that it did not have to replace its roof before seeking RCV damages—as required by the Policy—because Westfield breached the Policy by denying coverage.

The Florida Supreme Court has stated: "courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (citations and alteration omitted). The Policy provides that Westfield "will not pay on a replacement cost basis" … "[u]ntil the lost or damaged property is actually repaired or replaced; and … [u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (Doc. 22-1 at 76). The Eleventh Circuit has stated it could not and would not rewrite such plain terms of an insurance policy. *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192–

93 (11th Cir. 2021) ("That 'until and unless' provision is plain and unambiguous. It means that [the insurer] was not obligated to pay [the insured] the replacement cost value until [the insured] had actually made the repairs and incurred the costs of doing so.") (citing *Ceballo*, 967 So. 2d at 815).

Gulfpoint has not performed the roof replacement it claims it requires. (Doc. 48 at 5 (citing Doc. 48-5 at 43–44); Doc. 51 at 4). Under the Policy, and binding precedent from both the Florida Supreme Court and the Eleventh Circuit, Gulfpoint may not recover RCV damages here. Westfield is also entitled to summary judgment on this ground.

## CONCLUSION

Westfield has established that, under these facts, Gulfpoint's notice to Westfield's Hurricane Irma claim was unreasonably delayed. But Gulfpoint has not met its burden of rebutting the presumption that its delayed notice prejudiced Westfield. And because Gulfpoint has not performed the roof replacement it claims it needs, it may not recover RCV damages here. There is no genuine issue of material fact for trial, so Westfield is entitled to summary judgment.

Accordingly, it is now

**ORDERED:**

1. Defendant Westfield Insurance Co.'s Motion for Summary Judgment (Doc. 48) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment for Defendant Westfield Insurance Co. and to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Fort Myers, Florida on June 2, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record